IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 14, 2002 Session

## MARK VII TRANSPORTATION COMPANY, INC. v. JOSEPH BELASCO, ET AL.

### Direct Appeal from the Circuit Court for Shelby County
No. 97423 T.D.     Kay S. Robilio, Judge

-----

### No. W2002-00450-COA-R3-CV - Filed December 30, 2002

-----

This appeal arises from a declaratory judgment action filed by Mark VII Transportation Co., Inc., in which it sought a judgment declaring the parties' respective rights and obligations under an asset purchase agreement.   The trial court awarded summary judgment to the Defendant.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, JR. and FRANKLIN MURCHISON, SP. J., joined.

J. Kimbrough Johnson and Craig C. Conley, Memphis, Tennessee, for the appellant, Mark VII Transportation Co., Inc.

Tim Edwards and James F. Horner, Memphis, Tennessee, for the appellees, Joseph Belasco and Elite Worldwide Services, Inc.

### OPINION

Mark VII Transportation Co, Inc., ("Mark VII"), a Delaware corporation with its principle place of business in Memphis, Tennessee, commenced this cause of action in October of 1998 in Shelby County Circuit Court as a declaratory judgment action.  The Defendant, Joseph Belasco (Mr. Belasco), is a resident of New Jersey and was the sole stockholder of Elite Worldwide Services, Inc., ("Elite Services") a New Jersey corporation.  The crux of the dispute between these parties is the amount owed Mr. Belasco by Mark VII under a lease for property located in Newark, New Jersey, and an asset purchase agreement for Elite Services.  In its complaint, Mark VII asserted:

> Due to the defendant's threats to attempt to enforce the terms of the Agreement and the dispute as to the amount owed under the Agreement, the Plaintiff has filed this cause of action for the Court to determine the amount owed Defendant under the Agreement.

A genuine and real controversy exists between the parties for which it is appropriate and necessary for the Court to enter a judgment declaring the parties' respective rights and obligations, if any, under the Agreement.

Mark VII submitted that under the terms of the Agreement, it owed Mr. Belasco $27,684.00. Mark VII also prayed for costs and other relief to which it was entitled.

The asset purchase agreement ("the Agreement") at dispute provided for the sale of all assets of Elite Services to Mark VII. These were described as including: all inventory and supplies; accounts receivable; equipment; customer lists, contracts and business value; fixtures and leasehold improvements; cash and prepaid expenses and deposits; promotional materials, records, files and intangibles, including goodwill; service marks and the right to recover for any past infringement of the mark; all rights under transportation, real estate and license contracts and leases; all other property and assets, wherever located and whether or not reflected on its balance sheet. Mark VII also agreed to employ all of the personnel employed by Elite Services as of the closing date at their current salaries, with fringe benefits, including Mr. Belasco. Under the Agreement, Mark VII assumed and agreed to discharge unpaid obligations and liabilities described on Schedule A as attached to the Agreement. Schedule A enumerated several long-term debts of Elite Services to be assumed by Mark VII, including a promissory note of $83,584.00 to Mr. Belasco. Total long-term debt was listed at $102,831.00.

The purchase price to be paid by Mark VII consisted of:

Buyer's [Mark VII's] assumption of certain liabilities of the Seller as provided in Subsection 1.3 [of the Agreement] in a total amount equal to the stated book value (as determined by the application of generally accepted accounting principles consistently applied) of the Assets acquired by the Buyer from the Seller, plus such cash, if any, necessary to equal the liabilities assumed by Buyer.

The Agreement further provided that:

At Closing, the assets to be transferred and the Purchase Price to be paid (i.e., the liabilities to be assumed) shall be based upon the unaudited balance sheet of Seller as of July 31, 1993, with the Purchase Price to be adjusted as soon as practicable after the August 31, 1993 unaudited balance sheet of the Seller becomes available.

It also provided for an adjustment of assets sold and liabilities assumed on the last day of the first six months following the closing, in a manner provided by the Agreement in Schedule K, with payment to be made to the party entitled to the adjustment.

The parties closed on the sale on September 21, 1993. The parties agreed, however, to delay payment by Mark VII to Mr. Belasco for six months in order that an accounting could be performed and the true value of the assets ascertained. According to Mark VII's complaint, the parties agreed

that Mr. Belasco would be given a credit position on Mark VII's books for his equity in Elite Services. The amount to be paid for this equity would be determined six months later, on March 21, 1994.

The parties agree that the unaudited financial statement of Elite Services indicated that Mr. Belasco's equity, including the promissory note of $83,584.00, was $195,046.00 as of August 31, 1993. Mark VII contends, however, that in March of 1994, after all adjustments and set offs had been determined, Mr. Belasco was entitled to an equity balance of $97,684.07. In its complaint, Mark VII further asserts:

> Plaintiff [Mark VII] would further show that the Defendant [Mr. Belasco] agreed that Plaintiff could deduct from the above equity [the] amount [of] certain rental payments owed Defendant by Plaintiff. Such rental payments equaled $70,000.

Mr. Belasco answered, denying that the rental payments were to be deducted from his equity amount and counter-claiming for breach of the lease agreement and breach of the asset purchase agreement. By mutual consent of the parties, in October of 2000 the court appointed David Jones, CPA, to act as Special Master to perform an accounting to determine the amount, if any, owed by Mark VII to Mr. Belasco. The parties agreed that the Special Master's recommendations would be advisory and non-binding on the court or either party. The Special Master concluded that Mr. Belasco was owed $140,685.59, exclusive of interest, under the asset purchase agreement. He also determined that Mr. Belasco had paid $31,082.79 for fire insurance premiums which Mark VII was obligated to pay under the lease agreement. In July of 2001, Mr. Belasco and Elite Services moved for summary judgment, asking the court to adopt the findings of the Special Master, and seeking prejudgment interest, costs, and attorney's fees. Attached to its motion were a statement of undisputed facts, a memorandum in support of the motion, an affidavit of Mr. Belasco and an appendix of exhibits.

Mark VII filed no opposition to Mr. Belasco's motion for summary judgment.[1] In October of 2001, the court awarded summary judgment to Mr. Belasco in the amount of:

> (1) $140,685.59 due under the asset purchase agreement, plus prejudgment interest at the rate of 10% per annum commencing April 1, 1994, in the amount of $105,553.00, for a total of $246,238.59.

> (2) $46,105.79 for fire insurance premiums due under the lease agreement, including interest of 10% per annum commencing January 1, 1996.

> (3) $56,836.40 for attorneys fees and litigation costs.

Mark VII now appeals this award.

---

[1] The Court notes that present counsel did not undertake representation of Mark VII until April 2, 2002.

## Issues Presented

The determinative issue raised in this appeal, as we perceive it, is whether the trial court erred by awarding summary judgment to Mr. Belasco. Mark VII also appeals the award of prejudgment interest and attorney's fees. Mr. Belasco contends that this appeal is frivolous, and seeks damages pursuant to Tenn. Code Ann. § 27-1-122.

## Standard of Review

We review an award of summary judgment *de novo*, with no presumption of correctness afforded to the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). Summary judgment should be awarded when the moving party can demonstrate that there are no genuine issues regarding material facts of the cause of action and that it is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). Mere assertions that the nonmoving party has no evidence does not suffice to entitle the movant to summary judgment. *McCarley*, 960 S.W.2d at 588. The moving party must either conclusively demonstrate an affirmative defense or affirmatively negate an element which is essential to the nonmoving party's claim. *Id.* If the moving party can demonstrate that the nonmoving party will not be able to carry its burden of proof at trial on an essential element of its case, summary judgment is appropriate. *Id.*

When a party makes a motion for summary judgment which fulfills the requirements of Tenn. R. Civ. P. 56, the burden shifts to the nonmoving party to establish the existence of disputed material facts or that the moving party is not entitled to summary judgment as a matter of law. *Id.*; *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). The nonmoving party cannot merely rely on the pleadings, but must demonstrate that essential elements of a claim exist by: 1) pointing to evidence that creates a factual dispute; 2) re-enforcing evidence challenged by the moving party; 3) offering additional evidence which establishes a material dispute; 4) submitting a Tenn. R. Civ. P. 56.06 affidavit explaining the need for additional time for discovery. *McCarley*, 960 S.W.2d at 588.

## The Summary Judgment Award

As noted above, Mark VII filed no motion in opposition to Mr. Belasco's July 2001 motion for summary judgment. Mr. Belasco submits that the failure to file such an opposition is fatal to Mark VII's appeal. Mark VII contends that its burden to establish that Mr. Belasco was not entitled to summary judgment was not triggered because the report of the Special Master was first, advisory only and second, identified issues which needed to be resolved by the court. Mark VII submits that Mr. Belasco's motion for summary judgment was insufficient because the record, and the Special Master's report in particular, evidenced the existence of disputed material facts. Mark VII accordingly argues that it therefore was not required to respond to the motion.

Rule 56.03 of the Tennessee Rules of Civil Procedure provides:

In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the Tennessee Rules of Civil Procedure shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth is a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record.

Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment.

In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. . . .

The courts consistently have emphasized that a party opposing a motion for summary judgment which complies with Rule 56 may not simply rest on its pleadings, but must affirmatively oppose the motion. *See, e.g., Staples*, 15 S.W.3d at 89; *McCarley*, 960 S.W.2d at 588. Such opposition may be made by pointing to the evidence in the record which indicates disputed material facts. *McCarley*, 960 S.W.2d at 588. Silence, however, does not suffice. Rule 56 mandates that a party opposing a motion for summary judgment *must* serve and file a response to the motion. Tenn. R. Civ. P. 56.03.

The statements of material facts submitted by the parties on a motion for summary judgment are

intended to alert the court to precisely what factual questions are in dispute and point the court to specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own.

*Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 774 (Tenn. Ct. App. 2001)(*perm. app. denied*)(quoting with approval *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994)). Although a trial court may, at its discretion, waive the requirements of the rule where appropriate, the court may also refuse to consider the factual contentions of a non-complying party even where such facts are ascertainable by the record. *Id*. Thus the material facts set forth in the statement of the moving party may be deemed admitted in the absence of a statement controverting them by the

opposing party. *See* ROBERT BANKS, JR. & JUNE F. ENTMAN, TENNESSEE CIVIL PROCEDURE, § 9-4(i) (1999) (quoting *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 n.1 (7th Cir. 1995)).

In light of the record in this case, we find no error in the trial court's award of summary judgment to Mr. Belasco. Mr. Belasco's motion substantially complied with the requirements of rule 56, and Mark VII was required to respond to this motion. Mark VII, however, made no response, neither attempting to point out disputed facts in the record nor opposing Mr. Belasco's request for attorney's fees[2] or pre-judgment interest. The award of summary judgment to Mr. Belasco therefore was within the discretion of the trial court.

The award of prejudgment interest likewise was within the discretion of the trial court. A prejudgment interest award is based on equitable considerations. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927-28 (Tenn. 1998). The purpose of the award is to fully compensate the plaintiff for the loss of the use of sums to which he was entitled. *Id.* Even where the amount in dispute is not a sum certain, an award of prejudgment interest based on the judgment amount is not an abuse of discretion where the decision is equitable. *Id*.

In light of the foregoing, we affirm the judgment of the trial court in all respects. Mr. Belasco asks this Court to find this appeal frivolous; we decline. Costs of this appeal are taxed to the appellant, Mark VII Transportation Co., Inc., and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[2]Mr. Belasco's motion included an affidavit of counsel and itemization of attorney's fees.